This Court granted these two petitions for the writ of certiorari to decide, as a matter of first impression, whether the Court of Civil Appeals correctly interpreted and applied Ala. Code 1975, § 25-5-57(c)(1). That Code section provides:
 "(c) Setoff for other recovery. In calculating the amount of workers' compensation due:
 "(1) The employer may reduce or accept an assignment from an employee of the amount of benefits paid pursuant to a disability plan, retirement plan, or other plan providing for sick pay by the amount of compensation paid, if and only if the employer provided the benefits or paid for the plan or plans providing the benefits deducted."
In both Sanders v. Dunlop Tire Corp., the subject of the petition in case number 1951184, and Dunlop Tire Corp. v.Pitts, the subject of the petition in case number 1960105, the Court of Civil Appeals held that Dunlop did not provide or pay for the disability plan benefits because they were fringe benefits of Sanders's and Pitts's employment and that, therefore, Dunlop was not entitled to set those benefits off against the awards of compensation.
Section 25-5-57(c) was added by Act No. 92-537, 1992 Ala. Acts p. 1082. Section 17 of that Act amended § 25-5-57, including the addition of § 25-5-57(c); there was no previously existing provision for "setoff for other recovery."
We recognize that § 25-5-57(c)(1) actually states that "[t]he employer may reduce . . . the amount of benefits paid pursuant to a disability plan . . . by the amount of compensation paid." However, it is clear that the legislature intended to say that the employer may reduce the amount of workers' compensation by the amount of disability benefits paid pursuant to a plan provided or paid for by the employer. Section § 25-5-57(c) pertains to "calculating the amount of workers' compensation due." The end of § 25-5-57(c)(1) *Page 731 
refers to "the plan or plans providing the benefits deducted;" this phrase, in context, can mean only that the amount of benefits paid under employer-provided disability or retirement plans is to be deducted from workers' compensation benefits that would otherwise be payable. Section 25-5-57(c)(2) provides for the forfeiture of "all [workers'] compensation paid for any period to which is attributed any award of back pay." Section 25-5-57(c)(3) provides for a setoff against workers' compensation for any salary paid "during the benefit period." Thus, all three of these provisions are clearly intended to provide for reduction of workers' compensation benefits by a setoff of the amount of the specified other payments to the employee. The fact that § 25-5-57(c)(1) literally states that it provides for a reduction of disability or retirement plan benefits is a self-correcting error of drafting, probably caused by the awkward attempt to provide in the same sentence for the employer to "accept an assignment from an employee of the amount of benefits paid pursuant to a disability plan." We read § 25-57(c)(1), therefore, as allowing an employer to reduce the amount of workers' compensation benefits due by the amount of benefits paid or payable under a qualifying disability, retirement, or sick pay plan.
The question before us, therefore, is whether Dunlop "provided the benefits or paid for the plan or plans providing the benefits deducted."
At the trial of Sanders's claim, Dunlop's attorney examined Rick Ledsinger, Dunlop's labor relations manager:
 "Q. Mr. Ledsinger, are you familiar with the medical disability retirement plan or program in effect at Dunlop to which Mr. Sanders applied and got an award?
"A. Yes, I'm familiar with it.
 "Q. Does this enable employees to medically retire from Dunlop?
"A. Yes, it does.
"Q. Who pays for this program?
"A. It's company paid."
Sanders's attorney cross-examined Mr. Ledsinger, as follows:
 "Q. Is the medical disability retirement included as part of the fringe benefits to which you have testified?
"A. Yes, it is.
 "Q. What company pays the medical disability; is that Dunlop?
"A. It's Dunlop, yes, sir.
 "Q. And Royal Insurance Company pays the workmen's comp?
"A. Worker's comp, yes."
Dunlop introduced exhibits showing the cost of the benefits it provides its employees. The cost per hour of the "sickness and accident disability premium" was $0.144 in 1993. This was grouped in a category of "voluntary or negotiated payments"; that category includes other insurance and pension benefits that, together with the disability premium, cost $3.354 per hour in 1993 and $3.037 per hour in 1992.
In Ex parte Murray, 490 So.2d 1238 (Ala. 1986), this Court interpreted the following sentence, which is the last sentence of Ala. Code 1975, § 25-5-57(b): "Whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract shall be deemed a part of his or her earnings." This Court held that fringe benefits, such as the premiums and pension benefits discussed above, "are includable in the computation of the employee's average weekly wage,"490 So.2d at 1241, for purposes of calculating workers' compensation benefits due.
In deciding Sanders's appeal, the Court of Civil Appeals cited Murray and held that "Sanders paid for the medical disability retirement plan by accepting the fringe benefits in lieu of additional wages of $3.03 and $3.54 [sic] per hour."Sanders v. Dunlop Tire Corp., 706 So.2d 716 (Ala.Civ.App. 1996). However, the fact that fringe benefits are part of an employee's earnings for purposes of § 25-5-57(b), as held inMurray, does not answer the question whether "the employer provided the benefits or paid for the plan or plans providing the benefits" for purposes of § 25-5-57(c)(1).
Section 25-5-57(c)(3) provides instructive language that is part of the 1992 *Page 732 
amendment to the Workers' Compensation Law that also added § 25-5-57(c)(1):
 "If an employer continues the salary of an injured employee during the benefit period or pays similar compensation during the benefit period, the employer shall be allowed a setoff in weeks against the compensation owed under this article. For the purposes of this section, voluntary contributions to a Section 125-cafeteria plan for a disability or sick pay program shall not be considered as being provided by the employer."
Ala. Code 1975, § 25-5-57(c)(3) (emphasis added). There is no contention here that the medical disability plan from which Sanders and Pitts are receiving benefits is a § 125 cafeteria plan. See 26 U.S.C. § 125. The specification that contributions to a § 125 cafeteria plan are not to be considered to be "provided by the employer" implies that other similar types of benefits are to be considered to be provided by the employer, even if they are part of the employee's wages and other benefits. This implication may be expressed as a corollary of the "expressio unius est exclusio alterius" rule of statutory construction[1]: the express exclusion of cafeteria plans from the category of offsetting benefits is the implied inclusion of other disability, retirement, or sick pay plans.
Even aside from the comparison to § 25-5-57(c)(3), we are persuaded by Dunlop's argument that the construction advocated by Sanders and Pitts would render § 25-5-57(c)(1) virtually inoperative. The plaintiffs argue that their position applies only to fringe benefits that are negotiated as part of a collective bargaining agreement, as is the case with the disability plan provided by Dunlop to its employees. Pitts offered the testimony of Max Wright, the union benefits representative at Dunlop, who gave evidence that the Dunlop employees gave up cost-of-living adjustments in exchange for increased pension benefits. He testified that, therefore, he considered that the employees paid for the disability plan, because it was one of the benefits that were increased in return for giving up the cost-of-living adjustment. However, the failure to take the cost-of-living adjustment is equivalent to accepting the disability plan in lieu of a raise in wages, and is not reasonably to be considered as a situation in which the employee pays for the disability plan. The following exchange between the court and Wright shows how the circuit court viewed the matter:
 "The Court: The question in my mind is whether the employee provides anything. One way to look at it is that the employee provides the work and that the employer provides the pay, including the benefits. I guess another way that you look at it is that as to the pension plan when you give up your cost of living increases you are giving up some of what would have been wages to fund a fringe benefit; is that right?
"The Witness: Yes, sir.
 "The Court: But in any event, this isn't a situation where you take out part of what your wife makes or part from savings or something and add to something that your employer is giving you for your work for a pension plan contribution; is that right?
"The Witness: Yes, sir."
We agree with the circuit court's view that the employee does not "pay for" the plan simply by virtue of the fact that it is provided as part of his or her compensation.
We see no reason why fringe benefits that are provided to nonunion employees should not be treated the same as fringe benefits for union employees, both for purposes of § 25-5-57(b) and for purposes of § 25-5-57(c)(1). Rather, it seems that, as Dunlop argues, if the judgment of the Court of Civil Appeals is affirmed, then the setoff provision cannot apply in any case involving fringe benefits, but could apply only when retirement and disability plans are provided strictly as a gratuity by the employer. Such a situation would be rare and would be difficult for an employer to establish. Certainly, if an employer were trying to avoid Murray and to establish, for purposes of "average weekly wages" under § 25-5-57(b), that a disability, retirement, or other such plan was only a gratuity and not part of an employee's compensation, the plan would properly be considered *Page 733 
compensation for the employee's labor and therefore would be "earnings" under the holding of Murray. Similarly, for purposes of § 25-5-57(c)(1), such a plan should be considered a fringe benefit, either for union employees or nonunion employees, and, under the holding of the Court of Civil Appeals, the setoff provision of § 25-5-57(c)(1) would have little or no field of operation.
 "Fundamental to statutory interpretation is the rule that the courts are to ascertain and give effect to the intent of the legislature in enacting the statute. John Deere Co. v. Gamble, 523 So.2d 95 (Ala. 1988). In construing a statute, this court should, when possible, determine the intent of the legislature from the language of the statute itself. Pace v. Armstrong World Industries, Inc., 578 So.2d 281 (Ala. 1991). 'We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute.' Id., at 283 (citation omitted). Thus, the legislative intent 'may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished.' McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417, 422
(Ala. 1992); Ex parte Sanders, 612 So.2d 1199 (Ala. 1993)."
Junkins v. Glencoe Volunteer Fire Department, 685 So.2d 769,771 (Ala.Civ.App. 1996). See, also, Bama Budweiser ofMontgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala. 1992); Studdard v. South Central Bell Telephone Co.,356 So.2d 139 (Ala. 1978).
"A law will not be interpreted in such a way as to make it meaningless," Reserve National Insurance Co. v. Crowell,614 So.2d 1005, 1010 (Ala. 1993), cert. denied, 510 U.S. 824,114 S.Ct. 84, 126 L.Ed.2d 52 (1993). Courts must liberally construe the workers' compensation law "to effect its beneficent purposes," although such a construction must be one that the language of the statute "fairly and reasonably" supports. Exparte Beaver Valley Corp., 477 So.2d 408, 411 (Ala. 1985).
In deciding the appeal in Sanders, the Court of Civil Appeals held that the rationale of Scriven v. Industrial Commission ofthe State of Colorado, 736 P.2d 414 (Colo.App. 1987), a case cited by Dunlop in support of its argument, is not applicable. However, the rationale for the decision in Scriven is instructive and is clear authority for Dunlop's argument.
In Scriven, an injured employee appealed from a decision that the employer was entitled to set off against its workers' compensation liability the amount of benefits the employee had received from a pension trust fund. The Scriven court had to determine the source of the funding for the pension plan because the Colorado workers' compensation statute provided that, when benefits have been paid to an injured employee
 "under the provisions of a pension plan financed in whole or in part by the employer, . . . the aggregate benefits payable for . . . disability pursuant to this section [of the workers' compensation law] shall be reduced . . . by an amount equal as nearly as practical to such employer pension plan benefits."
Scriven, supra, 736 P.2d at 415 (quoting Colo.Rev. Stat., § 8-51-101(1)(d) (1986 Repl. Vol. 3B)).
 "[The injured employee] asserts the Commission erred by finding the pension fund was financed by the employer. He contends the contributions to the pension fund were part of the wage package obtained by union negotiations and, therefore, are employee contributions to the plan. We disagree.
 ". . . Obviously the pension plan is part of the remuneration the employees receive in exchange for their labor, but such is the case with any pension plan financed by an employer. The fact that the plan is a negotiated employment benefit does not change its character from being employer financed to employee financed.
 "The intent of the offset provision . . . is to prevent an injured employee from receiving 'double' disability benefits, i.e., workmen's compensation and disability pension, both financed by the employer. Myers v. State, 162 Colo. 435, 428 P.2d 83 (1967). This case falls within the intent of the statute, and the Commission did not err by ordering the workmen's compensation *Page 734 
benefits offset by the amount of the disability pension."
736 P.2d at 415-16 (emphasis added). We have found a number of cases that are consistent with Scriven, principally Darling v.Inter City Trucking, 221 Mich. App. 521, 561 N.W.2d 865 (1997);Western Elec., Inc. v. Ferguson, 371 So.2d 864 (Miss. 1979); and Cowan v. Southwestern Bell Tel. Co., 529 S.W.2d 485
(Mo.App. 1975).
In Cantrell v. Electric Power Bd., 811 S.W.2d 84 (Tenn. 1991), the Supreme Court of Tennessee disallowed a setoff, overruling an earlier case. However, the question there was whether disability benefits in the amount of Cantrell's full salary that were paid to him during the time he missed work could be set off against his workers' compensation benefits for permanent partial disability. The court held that the disability plan benefits could be set off against his workers' compensation benefits for temporary disability, because those two forms of benefits were both designed to continue at least part of a worker's salary during the worker's recuperation from a workplace injury. However, the court held that the employer could not credit the plan benefits for temporary disability, which paid the worker's full salary during his recuperation, against the amount due as workers' compensation for permanent partial disability, which compensation is intended to compensate for future loss of income. That situation is not present here, because the medical disability plan benefits Dunlop is paying Sanders and Pitts will continue until they are age 65, and the permanent disability benefits under workers' compensation pertain to the same period.
Pennsylvania law on this subject provides a well-reasoned resolution of some of the questions involved in such a setoff against workers' compensation benefits. In Toborkey v.Workmen's Comp. App. Bd. (H.J. Heinz), 655 A.2d 636
(Pa.Commw. Ct. 1995), appeal denied, 541 Pa. 655, 664 A.2d 544 (1995), the Commonwealth Court cited Temple v. Pennsylvania Dep't ofHighways, 445 Pa. 539, 285 A.2d 137 (1971), for the following holding:
 "The Supreme Court noted in Temple that sick leave, like vacation pay, was 'an incident or benefit provided under the work agreement and is an entitlement like wages for services performed,' [445 Pa.] at 542, 285 A.2d at 139, as opposed to payments in lieu of compensation, which are made in relief of the claimant's inability to labor. Therefore, the court concluded, the employer was not entitled to credit."
Toborkey, 655 A.2d at 638. Because the two disability benefits that Toborkey received both served to reduce other benefits that he had earned and could have received if he had not become disabled, the commonwealth court disallowed a credit or setoff, holding that "the benefits in question were wages for services performed, rather than payments in relief of Claimant's inability to labor." 655 A.2d at 641.
We think such considerations could be appropriate under §25-5-57(c)(1). If, because of a workplace injury, an employee receives benefits, but the receipt of those benefits will diminish other benefits that he would otherwise receive, the employee may be said to have "paid for" those disability benefits by the reduction in the employee's nondisability benefits. For example, if a 55-year-old employee suffers a disabling workplace injury and receives a 10-year disability retirement under a plan provided or paid for by the employer, but the employee's taking that disability retirement causes the employee's normal retirement benefits to be reduced, the reduction of the normal retirement benefits can be considered to diminish the extent to which the employer "pays for" the disability retirement plan. In such a case, the employee would partially "pay for" the disability retirement plan by having the normal retirement benefits reduced.
However, there is no evidence in these cases of such a reduction in benefits that would have been payable to Sanders or Pitts if they had not suffered the workplace injuries that are the subjects of these actions. In Toborkey, the disability pension Toborkey received was one of three options in the employer's retirement plan, the other two being normal retirement and early retirement. The disability option provided benefits that were reduced from the full normal retirement option. Here, the evidence indicates *Page 735 
that the disability plan is separate and apart from the retirement benefits that Sanders and Pitts are receiving or will later receive. We do not suggest that any diminution in normal retirement benefits caused by an inability to work during the intervening years constitutes payment for the disability retirement benefits by the employees. Such a loss would be suffered whether the employees receive workers' compensation benefits to age 65 or employer-provided disability benefits to that age, and so is not attributable to the receipt of the disability benefits. Rather, it is only if the receipt of disability benefits directly reduces the other benefits that this question will come up.
For the reasons stated above, we conclude that the characterization of a benefit provided by an employer as a "fringe benefit" or as a benefit resulting from a union-negotiated contract does not remove that benefit from the rule of § 25-5-57(c)(1). The Court of Civil Appeals erred in holding that Dunlop was not entitled to a § 25-5-57(c)(1) setoff, and, both in the Sanders case and in the Pitts case, as to that issue its judgment is due to be reversed.
Several other decisions of the Court of Civil Appeals have also construed § 25-5-57(c)(1). See Dunlop Tire Corp. v. Allen,659 So.2d 637 (Ala.Civ.App. 1995); Scott Paper Co. v. Taylor
(Ms. 2950251, October 25, 1996) (rehearing pending)*; Louallenv. Dunlop Tire Corp., [Ms. 2950187, November 22, 1996]___ So.2d ___ (Ala.Civ.App. 1996) (cert. granted, May 8, 1997, Supreme Court no. 1960745); and Dunlop Tire Corp. v. Robinson, [Ms. 2951025, Feb. 21, 1997] ___ So.2d ___ (Ala.Civ.App. 1997) (cert. petition pending, Supreme Court no. 1961248).Louallen and Robinson are inconsistent with our decision here today, because in those cases the Court of Civil Appeals relied on its decision in Sanders. Allen and Taylor are distinguishable. In Allen, the Court of Civil Appeals held that "Dunlop provided no evidence that it paid or provided these benefits to Allen." 659 So.2d at 639. To the extent that this was simply a failure of proof, it is distinguishable, but to the extent that Allen is inconsistent with our decision today, it is overruled. Taylor simply held that the phrase "providing for sick pay" in § 25-5-57(c)(1) does not modify the phrases "disability plan" and "retirement plan," but modifies only the phrase "other plan." ___ So.2d at ___. That question is not presented here, and Taylor is not affected by this decision.
As to the issues Dunlop attempts to present on the merits of the compensation awards to Sanders and Pitts, we see no ground on which to reverse the judgments of the Court of Civil Appeals. On those factual matters, the judgments are affirmed. On the issue of the applicability of § 25-5-57(c)(1), the judgments are reversed.
1951184 — AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
1960105 — AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SHORES,** HOUSTON, KENNEDY,** and COOK, JJ., concur.
HOOPER, C.J., and MADDOX and SEE,*** JJ., concur in the result.
[1] See, e.g., Weill v. State ex rel. Gaillard, 250 Ala. 328,34 So.2d 132 (1948).
* On September 19, 1997, the Court of Civil Appeals, on application for rehearing, withdrew its October 25, 1996, opinion and substituted another. See ___ So.2d ___
(Ala.Civ.App. 1997).
** Although Justice Shores and Justice Kennedy were not present at oral argument in case no. 1951184, they have listened to the tape of that oral argument.
*** Justice See was not a member of this Court when case no. 1951184 was orally argued; however, he has listened to the tape of that oral argument.