We granted Betty Jean Taylor and J.D. Davis's petition for the writ of certiorari to review the judgment of the Court of Civil Appeals reversing the trial court's judgment awarding them workers' compensation benefits pursuant to the scheduled-injury provision, Ala. Code 1975 § 25-5-57(a) (3)a.18. See ScottPaper Co. v. Taylor, 728 So.2d 632 (Ala.Civ.App. 1997). We reverse and remand.
On May 25, 1994, J.D. Davis sued Scott Paper Company for workers' compensation benefits based on hearing loss suffered after long-term exposure to harmful levels of noise during his employment with Scott Paper Company. On June 24, 1994, Betty Jean Taylor sued Scott Paper Company for workers' compensation based on hearing loss suffered while she was employed by Scott Paper Company. On October 17, 1995, the trial court awarded workers' compensation and medical benefits to Taylor, finding that she had suffered a 24.4% permanent partial disability. On October 26, 1995, the trial court awarded Davis workers' compensation benefits and medical benefits, finding that he had suffered an 11.9% permanent partial disability. Scott Paper appealed both awards. Davis and Taylor moved to have their cases consolidated, and the Court of Civil Appeals granted their motion. The Court of Civil Appeals reversed the judgments and remanded the cases with instructions, holding that Scott Paper could reduce the workers' compensation awards by the amount of the benefits Davis and Taylor received under the company-provided retirement plan.
The issue is whether Scott Paper Company is entitled to reduce the amount of workers' compensation benefits paid to Taylor and Davis by the amount of retirement benefits paid to them, pursuant to Ala. Code 1975 § 25-5-57(c) (1). More specifically, the issue is whether the legislature intended for normal retirement benefits to be set off against workers' compensation benefits. We hold that § 25-5-57(c) (1) does not allow an employer to set off, against workers' compensation benefits, the amount of benefits the worker received from a retirement plan that are unrelated to a job-related injury or compensation therefor.
Section 25-5-57(c) (1) states:
 "The employer may reduce or accept an assignment from an employee of the amount of benefits paid pursuant to a disability plan, retirement plan, or other plan providing for sick pay by the amount of compensation paid, if and only if the employer provided the benefits or paid for the plan or plans providing the benefits deducted."
Scott Paper contends that § 25-5-57(c) (1) allows it to deduct Taylor and Davis's retirement payments from their workers' compensation payments, arguing that the statutory phrase "providing for sick pay" does not modify "retirement plan" and, therefore, that all company-provided retirement benefits reduce a workers' compensation award. However, the employees contend that § 25-5-57(c) (1) does not allow employers to set off retirement plan payments against workers' compensation benefits; they argue that the phrase "providing for sick pay" modifies "retirement plan" as well as "other plan" and, therefore, that the set-off applies only to retirement plans that provide for some form of sick pay. We agree.
The basic rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. See Ex parte State Department ofRevenue, 683 So.2d 980, 982 (Ala. 1996). The principle ofnoscitur a sociis as a rule of construction is particularly relevant. "[W]here general and specific words which are capable of an analogous meaning are associated one with the other, they take color from each other, so that the general words are restricted to a sense analogous to that of the less general."Winner v. *Page 637 Marion County Comm'n, 415 So.2d 1061, 1064 (Ala. 1982). Thus, we conclude that the more specific phrase "other plan providing for sick pay" qualified the two preceding phrases "disability plan" and "retirement plan."
In Ex parte Dunlop Tire Corp., 706 So.2d 729, 733 (Ala. 1997), we discussed the importance of a court's ascertaining legislative intent when interpreting a statute:
 "`Fundamental to statutory interpretation is the rule that the courts are to ascertain and give effect to the intent of the legislature in enacting the statute. John Deere Co. v. Gamble, 523 So.2d 95 (Ala. 1988). In construing a statute, this court should, when possible, determine the intent of the legislature from the language of the statute itself. Pace v. Armstrong World Industries, Inc., 578 So.2d 281 (Ala. 1991). "We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute." Id., at 283 (citation omitted). Thus, the legislative intent "may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished." McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417, 422
(Ala. 1992); Ex parte Sanders, 612 So.2d 1199 (Ala. 1993).' [Quoting Junkins v. Glencoe Volunteer Fire Dep't, 685 So.2d 769, 771 (Ala.Civ.App. 1996), and citing other cases.]
 ". . . Courts must liberally construe the workers' compensation law `to effect its beneficent purposes,' although such a construction must be one that the language of the statute `fairly and reasonably' supports. Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala. 1985)."
When it amended the Workers' Compensation Act in 1992k by Act No. 92-537, Ala. Acts 1992, the legislature announced its intent, in § 1 of that Act:
 "It is the intent of the Legislature that the Department of Industrial Relations and the Alabama judicial system shall administer the Alabama Workers' Compensation Act to provide a workers' benefit system to insure the quick and efficient payment of compensation and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the Alabama Workers' Compensation Act. . . . The Alabama Workers' Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes."
. . .
 "It is also the intent of the Legislature in adopting this workers' compensation scheme to address difficulties in the current scheme that are producing a debilitating and adverse effect on that state's ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen's Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace [have] unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. . . ."
(Emphasis added.)
We do not agree that the Court of Civil Appeals' interpretation of § 25-5-57(c) (1) is the result intended by the legislature. It is clear from § 1 of Act No. 92-537, that the legislature's intent behind the amendment of the Workers' Compensation Act was to prevent "double recovery," such as payments from a disability plan or sick plan that a worker might receive as a result of an injury in addition to workers' compensation benefits. Although § 25-5-57(c) (1) names "retirement plan" as one of the plans from which benefits would be set off against workers' compensation benefits, we conclude that a plan providing for disability benefits, such as the plan involved in Ex parte Dunlop Tire Corp., supra, would be more in line with the intent of the statute than would a normal retirement plan such as the one involved in this case.
In Ex parte Dunlop Tire Corp., supra, we interpreted §25-5-57(c) (1) as allowing an employer to set off disability-plan benefits against awards of workers' compensation. These present cases are readily distinguishable from Dunlop in that the issue in Dunlop was whether to set off benefits received from a medical disability plan, based on a job-related injury, against workers' compensation benefits. In Dunlop, receiving benefits *Page 638 
under the disability plan and receiving workers' compensation benefits would have constituted a double recovery from the employer. Therefore, we held that the employer was entitled to a set-off of benefits. Id at 735.
The retirement plan in these present cases is a "normal retirement plan" and is independent of any plan providing for sick pay or any plan providing for disability benefits. The retirement benefits provided by Scott Paper Company are based solely upon the age of an employee and the length of service rendered by an employee to Scott Paper Company. We conclude that the legislature did not intend that benefits from the "normal retirement plan" in these present cases be set off against workers' compensation benefits. We hold that § 25-5-57 (c) (1) allows benefits to be set off against workers' compensation benefits if the plan whose benefits are to be set off has additional benefits based on the injury, e.g. sick pay.
The petitioners Taylor and Davis are retired employees of Scott; Paper Company. As such, they are to receive retirement benefits provided by Scott Paper based upon the number of years they were employed by Scott Paper. It is not reasonable to think the legislature intended that an employee, such as Taylor or Davis, who happens to be injured on the job should receive reduced workers' compensation benefits because of the retirement plan — retirement pay is a benefit these employees would have received regardless of the occurrence of an on-the-job injury.
We reverse the judgment of the Court of Civil Appeals and remand these cases for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
ALMON, SHORES, KENNEDY, SEE, and LYONS, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., dissent.