Linda D. Cross ("the employee") appeals from a judgment of the Morgan County Circuit Court permitting her former employer, Goodyear Tire Rubber Corporation *Page 793 
("the employer"), to set off the employee's workers'-compensation benefits against retirement benefits that the employee is drawing from the employer.
On March 12, 1998, the employee was adjudicated to have suffered a workplace injury to a scheduled member (her left leg) while in the line and scope of her employment with the employer, and the trial court awarded benefits under the Alabama Workers' Compensation Act in the amount of $20,772.82 for accrued benefits (immediately payable in a lump sum) and weekly benefits of $187 for 106 future weeks. That workers'-compensation judgment was affirmed by this court, without opinion, on October 23, 1998.Goodyear Tire Rubber Corp. v. Cross (No. 2970816), 771 So.2d 512
(Ala.Civ.App. 1998) (table) ("Cross I").
On approximately July 10, 1998, the employee applied for a disability retirement from the employer, pursuant to a collective-bargaining agreement entered into by the employer and the employee's union; she was approved for that retirement on August 1, 1998, and she began receiving monthly disability-pension benefits immediately thereafter. The collective-bargaining agreement provides for four kinds of pensions: (1) a "normal- retirement pension," available to any employee attaining age 65 or having five years of service beyond the age of 60; (2) a "disability-retirement pension," available to employees who have completed 10 years of service, who are not of "normal" retirement age, and who are "permanently incapacitated"; (3) an "early- retirement pension," available to employees who have 30 years of continuous service, or who are 55 years of age with 10 years of continuous service, and who do not qualify for pensions (1) or (2); and (4) a "deferred vested pension" available to employees completing 5 years of continuous service and who do not qualify for other pensions. A "disability-retirement pension" pays the same monthly amount as a "normal-retirement pension," i.e., $23 multiplied by the number of years of continuous service.
After the employee began drawing disability-retirement benefits, she filed a motion in the trial court seeking to preclude the employer from setting off its payment of those benefits against its obligations under the workers'-compensation judgment affirmed in Cross I. The employee contended (1) that the employer had not demonstrated its entitlement to a set-off; (2) that a set-off would be unconstitutional; and (3) that Section 301 of the Labor and Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempted jurisdiction to decide the matter. The employer filed a response in opposition to the employee's motion, contending that under § 25-5-57(c)(1), Ala. Code 1975, it was entitled to set off its future workers'-compensation obligations because the amount of disability-retirement benefits it had been paying ($1,152), considered on a weekly basis, exceeded the $187 it had been directed to pay each week in the workers'-compensation judgment for 106 weeks following the date of the judgment in Cross
The employer's response was supported by the affidavit of its manager of benefit operations. After a hearing on the employee's motion, the trial court entered a judgment declaring that the employer was entitled to set off the employee's workers'-compensation benefits from her disability-retirement benefits.
The employee contends that the trial court's judgment allowing a set-off was erroneous under the principles set forth inEx parte Dunlop Tire Corp., 706 So.2d 729 (Ala. 1997), and Exparte Taylor, 728 So.2d 635 (Ala. 1998), both of which address the set-off provisions of § 25-5-57(c)(1), Ala. Code 1975. That statute provides: *Page 794 
"In calculating the amount of workers' compensation due:
 "(1) The employer may reduce or accept an assignment from an employee of the amount of benefits paid pursuant to a disability plan, retirement plan, or other plan providing for sick pay by the amount of compensation paid, if and only if the employer provided the benefits or paid for the plan or plans providing the benefits deducted."
In Dunlop, our Supreme Court concluded that an employer- provided disability-benefit plan would trigger the set-off provision of § 25-5-57(c)(1) and would permit the reduction of workers' compensation benefits awarded to two workers — one permanently and totally disabled and one permanently and partially disabled — regardless of whether the plan was a fringe benefit of one's employment. However, in Taylor, the Supreme Court held that § 25-5-57(c)(1) does not apply to "normal" retirement plans (i.e., those that are based solely upon an employee's age and length of service) that are independent of any plan providing for sick pay or disability benefits. Therefore, under §25-5-57(c)(1), as interpreted in Dunlop and Taylor, the pertinent question is whether the benefits being paid to the employee by the employer are (a) "disability-plan" benefits paid as a result of a disability arising from a job-related injury, or (b) "normal-retirement-plan" benefits paid solely because of the employee's age and length of service.
Although the fact is not disclosed in the record in this appeal, the record in Cross I (of which we may take judicial notice) reveals that the employee was 48 years old at the time of the trial on January 16, 1998, turning 49 in February 1998; thus, the employee is now 51 years old. As we have noted, under the collective-bargaining agreement, an employee of the employer is not eligible to receive any payments of retirement benefits before the age of 65 unless he or she (1) is permanently incapacitated after having accrued 10 years of service; or (2) is age 55, and elects early retirement after having accrued 10 years of service or elects early payment of a deferred vested pension. Based upon her age as stated at trial, the employee was 48 years old, well below the "normal retirement age" of 65 under the agreement, when she began receiving disability-retirement benefits in August 1998. Absent her disability, the employee would not be entitled to receive disability-retirement benefits from the employer. Under these circumstances, Dunlop, not Taylor, applies, and the employer is entitled to a set-off.
The employee contends that the pension benefits she receives constitute "the only retirement . . . pension benefit" that she will ever receive; that but for her injury, she would still be working for the employer; and that the fact of her injury will cause a reduction in her retirement benefits because she will accrue no more years of service. However, these factors do not alter the applicability of Dunlop, or the nature of the employee's pension as employer-provided disability benefits. As the Supreme Court noted in Dunlop, a diminution of normal retirement benefits caused by an inability to work during the years between an injury and normal retirement age does not constitute "payment" for disability-retirement benefits; "it is only if the receipt of disability benefits directlyreduces the other benefits" that a question will arise as to whether the employee has paid for disability benefits with a reduction in other benefits. 706 So.2d at 735. Here, the employee, because she is injured, is able to immediately draw the same monthly pension she would have received upon reaching the age of 65 if she had voluntarily *Page 795 
stopped working, and her immediate receipt of these benefits will not prevent her from continuing to receive them after she attains normal retirement age. Thus, we reject the employee's contention that the employer has impermissibly been allowed to set off its workers'-compensation obligation against "regular," as opposed to "disability," retirement benefits.
In three pages of her brief, the employee raises no fewer than five separate constitutional challenges to §25-5-57(c)(1), arguing (1) that it "destroys a common-law cause of action," in contravention of § 13, Ala. Const. 1901; (2) that it violates the substantive and procedural due-process guarantees of the Fourteenth Amendment to the United States Constitution; (3) that it constitutes an "impermissible transfer of property by legislative edict"; (4) that it amounts to an impairment of the employee's employment contract and the agreement between the union and the employer; and (5) that it is so vague and overbroad as to violate due-process guarantees afforded in the Alabama Constitution of 1901. We note that while the employee notified the attorney general of her constitutional challenges in the trial court, she has not served a copy of her appellate brief upon the attorney general, as required by Rule 44, Ala.R.App.P.; nevertheless, in the interest of avoiding delay, we will briefly review her constitutional arguments. See Hester v. Ridings,388 So.2d 1218, 1221 (Ala.Civ.App. 1980).
The employee has provided no authority supporting her federal due-process and impairment-of-contracts arguments. Those arguments therefore fail to comply with Rule 28(a)(5), Ala.R.App.P., which requires citation of authority supporting a litigant's position, and we pretermit consideration of them.E.g., Hart v. Marcum, 692 So.2d 850, 851 (Ala.Civ.App. 1997);Pierce v. Helka, 634 So.2d 1031, 1033 (Ala.Civ.App. 1994).
Under Reed v. Brunson, 527 So.2d 102 (Ala. 1988), legislation that abolishes or alters a common-law cause of action or its enforcement does not violate § 13 of the Alabama Constitution of 1901 if that legislation "eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power." 527 So.2d at 115. According to the Alabama Supreme Court, the Legislature's intent in amending the Workers' Compensation Act so as to include § 25-5-57(c)(1) "was to prevent `double recovery,' such as payments from a disability plan or sick plan that a worker might receive as a result of an injury in addition to workers' compensation benefits." Taylor, 728 So.2d at 637. The availability to employees of such "double recoveries" could have been determined by the Legislature to be a social evil that contributed to "unduly increased cost[s] to employers in the state [without] concomitant benefit[s]." Act No. 92-537, Ala. Acts 1992, § 1 (stating purpose of 1992 amendments to the Workers' Compensation Act). Regardless of whether it abolishes or alters a common-law cause of action, § 25-5-57(c)(1) "ameliorates a perceived social evil" and is thus a permissible exercise of the Legislature's police power. Reed, 527 So.2d at 115.
We likewise reject the contention that § 25-5-57(c)(1) impermissibly transfers property of the employee to the employer by legislative fiat. While the employee contends that offsetting her disability-benefit payments against the employer's workers'- compensation obligation "take[s] a vested and accrued pension from the possession of the employee," the only thing "taken" by § 25-5- 57(c)(1) is the employee's entitlement to receive duplicative permanent-partial-disability compensation under the Workers' *Page 796 
Compensation Act for the remainder of the period after she attained maximum medical improvement, a right that had not vested under the Act at the time § 25-5-57(c)(1) was added to it. SeeReed, 527 So.2d at 114 (discussing "vested rights"). We further note that the employee's disability-retirement benefits will continue as long as the employee is alive and has a permanent disability, and that because the employee has already lived longer than the 106 "future weeks" for which she was awarded benefits under the judgment in Cross I, the employee will ultimately receive more compensation from the employer than she would have received under the Workers' Compensation Act.
The employee's final constitutional argument is that §25-5-57(c)(1) is unreasonable, vague, and overbroad if it is read to apply to "any pension." However, as Dunlop and Taylor make clear, § 25-5-57(c)(1) applies only to employer-provided pension plans that provide disability benefits during an employee's illness or disability, and that section (as construed by the Alabama Supreme Court) affords adequate guidance for determining which pensions will trigger its automatic offset provisions. Neither the utilization of collective bargaining in the making of a particular pension agreement, nor the status of a pension as a "fringe benefit" that might be included in the determination of compensation benefits in the absence of offset under § 25-5-57(b), Ala. Code 1975, is material to the question whether a double recovery exists. We therefore cannot conclude that the employee has demonstrated that § 25-5-57(c)(1) "sweep[s] unnecessarily broadly and thereby invade[s] the area of protected freedoms" so as to violate the requirement of due process. Municipal Workmen'sComp. Fund v. Jolly, 709 So.2d 1230, 1233 (Ala.Civ.App. 1997) (rejecting similar challenge to the reimbursement provisions of §25-5-11, another anti-double-recovery portion of the Workers' Compensation Act).
The employee's final contention is that the courts of Alabama are without jurisdiction to decide the set-off issue because it necessarily involves interpretation of a labor contract, and that § 301 of the LMRA preempts state judicial determination of the meaning of the agreement between the union and the employer. However, the United States Supreme Court has held that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished" pursuant to the LMRA. Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Of course, both this court and the trial court have been required to "consult" the agreement between the union and the employer in order to determine the nature of the benefits the employee has been receiving. However, because the employee does not offer an interpretation of the actual terms of the agreement that differs from that offered by the employer, we conclude that the LMRA does not preempt the employer's claim that the disability-retirement benefits the employee is unquestionably entitled to receive, and is receiving, under the agreement may be set off, under Alabama law, against the employer's state-created workers'-compensation obligation.
Based upon the foregoing facts and authorities, the judgment of the trial court is due to be affirmed.
AFFIRMED.
Yates, Monroe, Crawley, and Thompson, JJ., concur. *Page 797