This is the third time that these parties have been before this court. *Page 729 
Originally, after ore tenus proceedings, the trial court found William F. Irby, Jr., to be permanently, totally disabled and awarded benefits accordingly. Fort James Operating Company, Inc., filed a postjudgment motion. Thereafter, the trial court entered an amended judgment awarding Irby certain costs, and it denied the postjudgment motion. Fort James appealed, arguing, among other things, that the trial court erred in denying Fort James a setoff for disability-retirement benefits that Irby has been receiving. In a January 9, 2004, opinion, this court addressed Fort James's arguments and affirmed in part and reversed in part the judgment of the trial court. See Fort James Operating Co. v.Irby, 895 So.2d 282 (Ala.Civ.App. 2004). In pertinent part, this court held that Fort James was entitled to a setoff against the workers' compensation benefits awarded to Irby "for that portion of the disability-retirement benefits that Irby receives that are in excess of those that he would have received" had he taken a regular retirement rather than electing to receive disability-retirement benefits. Fort James Operating Co. v.Irby, 895 So.2d at 290.
Fort James petitioned the Alabama Supreme Court for certiorari review. The Alabama Supreme Court granted certiorari review only as to two issues that are not pertinent to the issues raised in this appeal. After considering those issues, the supreme court reversed this court's judgment with regard to those two issues.Ex parte Fort James Operating Co., 895 So.2d 294 (Ala. 2004). The supreme court's opinion in Ex parte Fort James OperatingCo., supra, did not disturb this court's holding with regard to the issue of the setoff of disability-retirement benefits against the workers' compensation benefits awarded to Irby; accordingly, this court's holding with regard to that issue became the law of the case. See Ex parte Jones, 774 So.2d 607, 608 (Ala.Civ.App. 2000) ("`[o]n remand, the issues decided by the appellate court become [the] law of the case. . . .'" quoting Walker v. CarolinaMills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App. 1983)); Erbev. Eady, 447 So.2d 778, 779 (Ala.Civ.App. 1984) ("When a case is remanded to a trial court after a decision on appeal, `issues decided by the appellate court become law of the case. . . .'" (quoting Walker, supra)).
On remand, the trial court, on August 12, 2004, entered a new judgment in which it, in pertinent part, found that Fort James was entitled to set off a portion of the disability-retirement benefits Irby has been receiving against the amount of workers' compensation benefits it owed Irby, ordered Fort James to pay interest on the workers' compensation award, and awarded Irby's attorney an attorney fee. On appeal, Fort James raises three issues: (1) whether the trial court erred in calculating the amount of the disability-retirement-benefits setoff, (2) whether the trial court erred in awarding Irby postjudgment interest and in calculating the amount of postjudgment interest that is due, and (3) whether the trial court erred in calculating the attorney-fee award.
We address the third issue raised by Fort James first, because we conclude that Fort James lacks standing to challenge the calculation of the attorney-fee award. See Ex parte Fort JamesOperating Co., 871 So.2d 51 (Ala. 2003) (holding that an employer lacks standing to obtain judicial review of an attorney's fee awarded to the worker's attorney in a workers' compensation case). Therefore, that issue is not properly before this court, and we dismiss the appeal as to that issue. SeeGoodyear Tire Rubber Co. v. Moore, 900 So.2d 1239
(Ala.Civ.App. 2004) (concluding that the employer in a workers' compensation *Page 730 
action lacked standing to raise an issue pertaining to the trial court's award of an attorney fee to the workers' attorney and dismissing the employer's appeal).
Fort James argues that the trial court erred in calculating the amount of the disability-retirement-benefits setoff. In our January 9, 2004, opinion, this court set forth the facts pertinent to the issue of the disability-retirement-benefits setoff and addressed Fort James's argument that the trial court erred in denying it a setoff for the disability-retirement benefits that Irby has been receiving as follows:
 "Section 25-5-57(c), Ala. Code 1975, provides, in pertinent part:
 "`(c) Setoff for other recovery. In calculating the amount of workers' compensation due:
 "`(1) The employer may reduce or accept an assignment from an employee of the amount of benefits paid pursuant to a disability plan, retirement plan, or other plan providing for sick pay by the amount of compensation paid, if and only if the employer provided the benefits or paid for the plan or plans providing the benefits deducted.
"`. . . .
 "`(3) If an employer continues the salary of an injured employee during the benefit period or pays similar compensation during the benefit period, the employer shall be allowed a setoff in weeks against the compensation owed under this article. . . .'
 "Fort James argues that the trial court erred in refusing to award it a credit for disability-retirement benefits it provided or paid for Irby. The record indicates that, when Irby attempted to return to work in April 1998, Fort James did not have any jobs that would accommodate his medical restrictions. Therefore, Irby chose to retire.
 "Fort James is a contributor to the `PACE Industry Union-Management Pension Fund' (`the PACE fund'), which is administered by the union of which Irby is a member. Other employers in the industry also contribute to the PACE fund on behalf of their employees. There are three ways in which an employee may qualify for a pension under the PACE fund: (1) by reaching the age of 65 (`regular retirement'); (2) by reaching the age of 55 and having 10 years of vested service (`early retirement'); or (3) by becoming permanently and totally disabled after 10 years of vested service (`disability retirement').
 "At the time Irby retired from Fort James, he qualified for both early retirement and disability retirement. Under the early-retirement plan, Irby would have received $457 per month in pension benefits. However, Irby retired under the disability-retirement plan and receives $1,027 per month in monthly benefits; that amount is the same amount Irby would have received if he had retired in April 1998 but had elected to wait until the age of 65, when he would qualify for regular retirement, to receive pension benefits. If Irby had not been determined by the PACE fund to be disabled in April 1998, and if he had continued working for Fort James until he reached the age of 65 and qualified for regular retirement, he would have accrued retirement benefits in addition to those that had accrued by April 1998; therefore, his regular-retirement monthly pension benefits would have been greater.
 "Fort James cites Ex parte Dunlop Tire Corp., 706 So.2d 729 (Ala. 1997), and Ex parte Taylor, 728 So.2d 635 (Ala. 1998), in support of its argument that it is entitled to a setoff for the amount of *Page 731 
the disability-retirement benefits Irby receives. Fort James has also made the argument that, at a minimum, it is entitled to a setoff for that part of the disability-retirement benefits that exceed the amount Irby would have received had he elected to take an early retirement. In Ex parte Taylor, supra, our supreme court held that `§ 25-5-57(c)(1) allows benefits to be set off against workers' compensation benefits if the plan whose benefits are to be set off has additional benefits based on the injury, e.g., sick pay.' 728 So.2d at 638. Thus, Fort James argues, the trial court erred in refusing to offset the monthly disability-retirement benefits, or a portion thereof, Irby receives against its liability to Irby for workers' compensation benefits.
 "The issue in Ex parte Dunlop Tire Corp., supra, was whether the employer paid for or provided the benefits with which it sought to offset its liability for workers' compensation benefits. Our supreme court held that § 25-5-57(c)(1) allows an employer to offset its workers' compensation liability by `the amount of benefits paid or payable under a qualifying disability, retirement, or sick pay plan.' 706 So.2d at 731. Thus, if an employee contributed to or paid for the benefits, the employer would not be entitled to a setoff for the amount of those benefits paid. Our supreme court concluded that the employer had provided the benefits for which it sought a setoff and, therefore, that the employer was entitled to the setoff. Ex parte Dunlop Tire Corp., 706 So.2d at 735.
 "In so holding, the court noted that the mere fact that the benefits were paid by the employer on behalf of the employee as a portion of the employee's compensation did not change the character of those benefits to ones being provided or paid for by the employee. Ex parte Dunlop Tire Corp., supra. In dicta, the court also stated:
 "`If, because of a workplace injury, an employee receives benefits, but the receipt of those benefits will diminish other benefits that he would otherwise receive, the employee may be said to have "paid for" those disability benefits by the reduction in the employee's nondisability benefits. For example, if a 55-year-old employee suffers a disabling workplace injury and receives a 10-year disability retirement under a plan provided or paid for by the employer, but the employee's taking that disability retirement causes the employee's normal retirement benefits to be reduced, the reduction of the normal retirement benefits can be considered to diminish the extent to which the employer "pays for" the disability retirement plan. In such a case, the employee would partially "pay for" the disability retirement plan by having the normal retirement benefits reduced.'
"Ex parte Dunlop Tire Corp., 706 So.2d at 734.
 "The facts of Cross v. Goodyear Tire Rubber Corp., 793 So.2d 791 (Ala.Civ.App. 2000), are similar to those of this case. In Cross, the employer offered several retirement plans; those options included regular retirement, early retirement, and disability retirement. The worker did not qualify to retire under the regular- or early-retirement plans, but, as a result of her on-the-job injury, she was entitled to, and did in fact, retire under the disability-retirement plan. The trial court allowed the employer to set off the amount of the worker's disability-retirement benefits from the amount of workers' compensation benefits that the employer was required *Page 732 
to pay the worker. This court found that,
 "`under § 25-5-57(c)(1), as interpreted in Dunlop
and Taylor, the pertinent question is whether the benefits being paid to the employee by the employer are (a) "disability-plan" benefits paid as a result of a disability arising from a job-related injury, or (b) "normal-retirement-plan" benefits paid solely because of the employee's age and length of service.'
 "Cross, 793 So.2d at 794. This court affirmed the trial court's award of a setoff, concluding that because the employee did not qualify for early or regular retirement because of her age, the employee was entitled to receive retirement benefits only because of her disability. Cross, supra.
 "The retirement plans involved in this case are substantially similar to those involved in Cross, supra. Also as in Cross, the benefits paid to Irby are not based solely on his age and length of service; the disability-retirement benefits are paid to Irby as a result of his disability. However, in this case, Irby, unlike the claimant in Cross, qualified for both early retirement and disability retirement. Irby receives additional monthly retirement benefits because he retired under the disability-retirement plan rather than the early-retirement plan. We conclude that under the authority of Cross, supra, Fort James is entitled to a setoff, but only for that portion of the disability-retirement benefits that Irby receives that are in excess of those that he would have received had Irby retired solely because of his age and length of service."
895 So.2d at 288-290 (emphasis added).
On remand, the trial court entered a judgment in which it recalculated the workers' compensation award by applying a setoff for the disability-retirement benefits Irby has been receiving. The trial court's August 12, 2004, judgment provides, in pertinent part:
 "The Court finds that PACE Industry Union-Management Pension Fund is a defined benefit retirement plan administered by the Paper Chemical Workers Union for union members employed by numerous employers including [Fort James] that provides a pension for covered workers. The Court further finds that the amount drawn by [Irby] is based strictly upon the years of service and there are three (3) ways to qualify for the pension; (1) by attaining 65 years of age; (2) by attaining 55 years of age after 10 years of service or; (3) by becoming totally and permanently disabled after 10 years of service. The Court finds that the pension plan is a vested pension plan independent of any plan provided by [Fort James] for sick pay or disability. In fact, [Fort James] does have a separate sick pay plan which paid to [Irby] the sickness and accident benefits credited above. In other words, the Court finds that this is not a disability plan or sick pay plan as [Irby] would have drawn these funds at some point even if he had not become disabled. In fact, if [Irby] had been able to continue working, he would have been able to draw an even greater amount of retirement. At the time [Irby] retired from Fort James he was qualified to receive a pension based on early retirement or a pension based on disability retirement under the PACE Industry Union-Management Pension Fund. If [Irby] had qualified for an early retirement pension he would have received Four Hundred Fifty-Seven and 00/100 ($457.00) Dollars per month in pension benefits; however, [Irby] qualified under the disability option and receives *Page 733 
One Thousand Twenty-Seven and 00/100 ($1,027.00) Dollars per month in pension benefits. The Court finds the latter amount to be the same amount [Irby] would have received as his regular retirement benefit if he had retired in April 1998 but deferred payment of the benefit until he attained age 65 years. Therefore, the Court finds that [Fort James] is entitled to a setoff, but for only that portion of the pension benefits that [Irby] receives that are in excess of those that he would have received had [Irby] retired solely because of his age and length of service. In other words, there will be a setoff equal to the difference between One Thousand Twenty-Seven and 00/100 ($1,027.00) Dollars and Four Hundred Fifty-Seven and 00/100 ($457.00) Dollars until [Irby] reaches 65 years of age and at that point the setoff terminates completely. The setoff weekly is One Hundred Thirty-One and 53/100 ($131.53) Dollars ($1,027.00-$457.00 = $570.00 × 12 months = $6,840.00 divided by 52). Therefore, [Fort James] is entitled to a setoff on accrued benefits for the portion of the pension benefits paid to [Irby] in the amount of Forty Thousand Six Hundred Forty-Two and 77/100 ($40,642.77) Dollars ($131.53 × 309 weeks) and a setoff of Two Thousand Eight Hundred Twenty-Three and 57/100 ($2,823.57) for sickness and accident benefits paid to [Irby] leaving an accrued benefit of One Hundred Two Thousand Nine Hundred Ninety-Nine 66/100 ($102,999.66) Dollars plus interest, owed to [Irby]."
Fort James contends that the trial court erred in terminating the disability-retirement-benefits setoff when Irby reaches 65 years of age. It maintains that under the ruling of the trial court, Irby would receive both early-retirement benefits and regular-retirement benefits and that that duplication of benefits is prohibited by the PACE plan. In addition, Fort James argues that the trial court's calculation of the setoff is not in compliance with this court's directions in its January 9, 2004, opinion. Irby argues that the trial court determined the setoff exactly as ordered by this court.
As discussed above, under the circumstances of this case, Irby had several benefit options. Irby elected to retire early and accept disability-retirement benefits along with workers' compensation benefits. Having made that choice, Irby could not then, upon reaching the age of 65, change his retirement status and elect to receive regular-retirement benefits rather than disability-retirement benefits. The effect of the trial court's calculation of the disability-retirement-benefits setoff is to effect such a change in Irby's retirement status.
Further, there might be a valid argument for terminating a setoff for disability-retirement benefits when the worker reaches retirement age because his or her disability is no longer relevant. However, nothing in § 25-5-57(c), Ala. Code 1975, the portion of the Workers' Compensation Act that governs setoffs against workers' compensation benefits, authorizes a court to terminate a setoff upon the worker's reaching retirement age. Although "`[c]ourts must liberally construe the workers' compensation law "to effectuate its beneficent purposes,". . . such a construction must be one that the language of the statute "fairly and reasonably" supports.'" Ex parte Weaver,871 So.2d 820, 824 (Ala. 2003) (quoting Ex parte Dunlop Tire Corp.,706 So.2d 729, 733 (Ala. 1997), quoting in turn Ex parte BeaverValley Corp., 477 So.2d 408, 411 (Ala. 1985)). Also, "`[a] general rule of construction constantly invoked by courts is that, if no exceptions to the positive terms of a general statute are made, the conclusive *Page 734 
presumption is that the legislature intended none, and the duty of the court is to interpret law not make law by engrafting exceptions upon statutes.'" City of Birmingham v. Weston,233 Ala. 563, 567, 172 So. 643, 646 (1937) (quoting 6 McQuillin,Municipal Corporations § 2893) (emphasis omitted). It is up to the legislature, not the courts, to make such an exception. Cityof Birmingham v. Weston, supra. "An action brought under the Alabama Work[ers'] Compensation laws is purely statutory."Slagle v. Reynolds Metals Co., 344 So.2d 1216, 1217 (Ala. 1977). If the legislature had chosen to provide for the termination of a setoff against a workers' compensation award, the legislature would have made such a provision; however, the legislature did not do so. Accordingly, we must conclude that the trial court erred in terminating the setoff of Irby's disability-retirement benefits from his workers' compensation benefits.
Fort James next contends that, because neither this court nor the Alabama Supreme Court instructed the trial court to award postjudgment interest, the trial court lacked authority to award postjudgment interest on the workers' compensation award in favor of Irby. "Section 8-8-10, Ala. Code 1975, states that all `[j]udgments for the payment of money, other than costs,' bear interest from the date of judgment." Smith v. MBL Life AssuranceCorp., 604 So.2d 406, 407 (Ala. 1992). "Section 8-8-10 should, and does, apply to work[ers'] compensation awards." Ex parteStanton, 545 So.2d 58, 60 (Ala. 1989); see also Sullivan, Long Hagerty, Inc. v. Goodwin, 658 So.2d 493 (Ala.Civ.App. 1994) (noting that our supreme court held in Ex parte Stanton that postjudgment interest accrues on a workers' compensation judgment). Further,
"Rule 37, Ala. R.App. P., states as follows:
 "`Unless otherwise provided by law, if a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is provided by law shall be payable from the date the judgment was entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the certificate of judgment shall contain instructions with respect to allowance of interest.'
"(Emphasis supplied.)
 "Rule 37, Ala. R.App. P., is virtually identical to the Federal rule, F.R.App. P. 37. Interpreting F.R.App. P. 37, the Eighth Circuit Court of Appeals held: `The first sentence makes it clear that where a money judgment is affirmed in the court of appeals, the interest that attaches by force of law upon [the money judgment's] initial entry is payable as if no appeal had been taken. . . .' Total Petroleum, Inc. v. Davis, 822 F.2d 734, 738 n. 7 (8th Cir. 1987) (emphasis supplied). We hold that that interpretation of F.R.App. P. 37 is equally applicable to Ala. R.App. P. 37."
Smith v. MBL Life Assurance Corp., 604 So.2d at 407-08. Interest accrues on any final judgment or any portion of any judgment that is affirmed on appeal, until that judgment is satisfied. Schulte v. Smith, 708 So.2d 138 (Ala. 1997).
Although neither the Alabama Supreme Court nor this court instructed the trial court to calculate postjudgment interest on the judgment in favor of Irby, the Alabama Supreme Court has not specifically held that a certificate of judgment must provide instructions for the calculation of postjudgment interest before interest is payable. Therefore, we conclude that Fort James's argument that the trial court lacked the authority to award postjudgment *Page 735 
interest on a workers' compensation judgment is without merit.
As part of its argument that the trial court erred in awarding postjudgment interest, Fort James contends that the trial court erred in calculating that interest. Fort James argues that, because § 8-8-10, Ala. Code 1975, authorizes interest at a rate of 12% per annum, accrued benefits must be unpaid for one year before 12% interest is owed on those benefits. Fort James specifically argues that most of the benefits accruing after the original February 13, 2003, workers' compensation judgment have not been unpaid for one year and therefore that the trial court should have calculated the postjudgment interest due at a reduced rate. That argument is without merit. However, the trial court calculated interest owed on the judgment that terminated the setoff of Irby's disability-retirement benefits from his workers' compensation benefits, and this court has reversed that portion of the trial court's judgment. On remand, the trial court is instructed to recalculate the postjudgment interest due on the workers' compensation award after it enters a judgment in compliance with this opinion.
The appeal is dismissed in part; the judgment of the trial court is affirmed in part and reversed in part; and this cause is remanded for entry of a judgment consistent with this opinion.
APPEAL DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.