PER CURIAM.
Ronald Gray sued Danny Gray Flooring (“Gray Flooring”), a business owned by Ronald, on October 13, 2000, seeking to recover workers’ compensation benefits for injuries he sustained to his lower back on November 1, 1998. Gray Flooring answered the complaint on October 25, 2000. On May 17, 2001, Everest National Insur- *754 anee Company (“Everest”) moved to intervene in the workers’ compensation action as a real party in interest. Everest alleged that Ronald was the owner of Gray Flooring; that it was the workers’ compensation insurer for Gray Flooring from February 7, 1998, through February 7, 2000; and that the case was not adversarial in nature because Ronald was the owner of Gray Flooring. Everest sought to intervene in order to fully defend the claim against Gray Flooring and to seek a determination of its obligations, if any, pursuant to the Alabama Workers’ Compensation Act (“the Act”). The trial court entered an order on June 18, 2001, granting. Everest’s motion to intervene.
On September 25, 2001, Everest filed a third-party complaint against Cincinnati Insurance Company (“Cincinnati Insurance”), Guarantee Mutual Life Insurance Company (Guarantee Mutual”),[1] and Fireman’s Fund Insurance Company (“Fireman’s Fund”). Everest alleged in the third-party complaint that Cincinnati Insurance was the workers’ compensation insurer for Terry Fry Flooring, Inc., in December 1988 when Ronald suffered an injury to his lower back at the L4-L5 level while employed by Terry Fry Flooring. Everest also alleged in the third-party complaint that Guarantee Mutual was the workers’ compensation insurer for Gray Flooring in November 1995 when Ronald suffered an injury to his lower back at the L5-S1 level while working for Gray Flooring. Everest further alleged in the third-party complaint that Fireman’s Fund was the workers’ compensation insurer for Gray Flooring from February 8, 2000, through the last day that Ronald worked for Gray Flooring; that Ronald continued to work after sustaining his lower-back injury in November 1998; that the cumulative physical activities of Ronald’s work for Gray Flooring caused him to aggravate his back condition; and that Ronald’s last injurious exposure to the work conditions that aggravated his back condition occurred during the period in which Fireman’s Fund was the workers’ compensation insurer for Gray Flooring. Everest alleged that Cincinnati Insurance, Guarantee Mutual, and Fireman’s Fund are liable for the payment of benefits pursuant to the Act and requested that the trial court make a determination as to the rights and responsibilities of the parties.
On May 6, 2002, Ronald amended his complaint to assert a claim against Fireman’s Fund. He alleged that after injuring his lower back on November 1, 1998, he continued to work as a carpet installer for Gray Flooring; that his back condition was aggravated by the cumulative physical activities required of his job; and that the last injurious exposure tó the working conditions that aggravated his back condition occurred during the period in which Fireman’s Fund was Gray Flooring’s workers’ compensation insurer and, therefore, that Fireman’s Fund is responsible for the payment of workers’ compensation benefits and medical benefits.
On May 7, 2002, Ronald, Gray Flooring, and Everest petitioned the court to approve a settlement of the claims asserted by Ronald in his initial complaint against Gray Flooring. The settlement petition indicated that Everest, as Gray Flooring’s workers’ compensation insurer from February 7, 1998, through February 7, 2000, had agreed to settle all claims arising from Ronald’s November 1, 1998, injury for $105,000. The trial court, on May 9, 2002, entered an order approving the settlement *755 reached by Ronald, Gray Flooring, and Everest.
On May 23, 2002, Fireman’s Fund moved the trial court to set aside its order approving the settlement reached by Ronald, Gray Flooring, and Everest. That motion was denied by the trial court on June 25, 2002.
On July 19, 2002, Fireman’s Fund filed a cross-claim against Gray Flooring, alleging that its workers’ compensation coverage for Gray Flooring had ended on December 3, 2000; that Ronald had continued to perform work for Gray Flooring through February 2001; and that if the trial court determined that the cumulative physical activities of Ronald’s work aggravated his back condition so as to render him disabled, then Gray Flooring and its workers’ compensation insurer after December 2, 2000, are responsible for the payment of workers’ compensation and medical benefits, because they bore the risk of a com-pensable injury after December 2, 2000. On that same date, Fireman’s Fund also moved the court for a summary judgment as to the claims asserted against it by Everest and Ronald, arguing that Ronald had failed to give it notice of his alleged cumulative-stress injury, in violation of § 25-5-78, Ala.Code 1975, and, therefore, that Ronald is precluded from recovering workers’ compensation and medical benefits from Fireman’s Fund. Both Ronald and Everest filed responses to the summary-judgment motion. The trial court entered an order on October 7, 2002, denying the motion for a summary judgment.
Following an ore tenus proceeding, the trial court entered a lengthy and detailed order on April 11, 2003, finding in favor of Ronald and third-party plaintiff Everest as to Fireman’s Fund, and in favor of third-party defendant Cincinnati Insurance and third-party defendant Guarantee Mutual as to the claims asserted against them by Everest. The trial court specifically found that the last-injurious-exposure rule was applicable to this case; that Ronald suffered a cumulative-stress injury that aggravated his prior back injuries; that Ronald’s last injurious exposure occurred during the first week of October 2000; that Ronald’s last injurious exposure occurred during the period that Fireman’s Fund provided workers’ compensation insurance to Gray Flooring; that Ronald is permanently and totally disabled; and that Fireman’s Fund is solely liable for. all medical bills incurred after October 2000, as well as for all accrued and future disability payments to which Ronald is entitled. Accordingly, the trial court ordered Fireman’s Fund to pay Ronald $24,957 in temporary and permanent disability benefits accrued since May 7, 2002; ordered Fireman’s Fund to pay Ronald $451.35 in benefits per week so long as Ronald remains permanently and totally disabled; ordered Fireman’s Fund to pay an attorney fee of $56,840.19; ordered Fireman’s Fund to pay all future medical treatment related to Ronald’s injury; and ordered Fireman’s Fund to reimburse Everest $62,617.22 for medical benefits expended by Everest after October 2000.[2]
On May 9, 2003, Fireman’s Fund moved the trial court to alter, amend, or vacate its judgment. The trial court, on June 25, 2003, entered an order denying the post-judgment motion. Fireman’s Fund appeals.[3]
*756 This case is governed by the 1992 Workers’ Compensation Act, 25-5-1 et seq., Ala. Code 1975. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues in a workers’ compensation case shall be without a presumption of correctness. § 25 — 5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25 — 5—81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12 — 21—12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The [1992 Workers’ Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Ronald was a self-employed carpet installer doing business as Danny Gray Flooring at the time he suffered the injuries made the basis of these complaints. Gray Flooring was not incorporated, and Ronald stated that he operated Gray Flooring as a sole proprietorship. Ronald’s duties as a carpet installer required heavy manual labor, including regularly lifting heavy rolls of carpet, cutting, pulling, pushing, stooping, bending, and kneeling.
Ronald has had a history of back-related injuries. On December 27, 1988, while employed as a carpet installer for Terry Fry Flooring, Inc., Ronald suffered an injury to his lower back during the course of his employment. He underwent surgery in February 1989 to repair a herniated disc at the L4-L5 level. Cincinnati Insurance was Fry Flooring’s workers’ compensation insurer at the time of Ronald’s injury. Ronald and Cincinnati Insurance entered into a settlement agreement in January 1990, settling Ronald’s workers’ compensation claim. Pursuant to the settlement agreement, Cincinnati Insurance was responsible for any future medical treatment related to the injury at the L4-L5 disc level.
On November 25, 1995, while working for Gray Flooring, Ronald suffered an injury to his lower back while moving a dentist chair. He underwent surgery in March 1998 to repair a herniated disc at the L5-S1 level. Guarantee Mutual was Gray Flooring’s workers’ compensation insurer at the time of this injury, and it paid for Ronald’s medical treatment. Following the March 1998 surgery, Ronald returned to his regular duties as a carpet installer for Gray Flooring; however, he continued to receive treatment related to the L5-S1 injury, which Guarantee Mutual continued to pay for until November 1, 1998, when Ronald suffered an additional injury to his lower back.
On November 1, 1998, while working for Gray Flooring, Ronald suffered an additional injury to his lower back while moving a heavy pallet of carpet tiles. He underwent an additional surgery in January 1999 to repair a herniated disc at the L2-L8 level. Everest was Gray Flooring’s workers’ compensation insurer at the time of this injury, and it paid for his medical treatment. Following this surgery, Ronald returned to his regular duties as a carpet installer for Gray Flooring. This injury was the basis of Ronald’s initial complaint against Gray Flooring, and; as mentioned above, Ronald, Gray Flooring, *757 and Everest entered into a settlement agreement regarding this injury.
Ronald was referred to Dr. Kenneth Varley in August 1999 for treatment of his pain. Dr. Varley not only treated Ronald at the L2-L3 level of his back, which was injured in November 1998, he also treated Ronald at the L4-L5 and L5-S1 levels of his back that had been previously injured. Dr. Varley treated Ronald with injections, muscle relaxers, and narcotic pain medications, including methadone.
Ronald was seen by Dr. Varley on December 21, 1999. Dr. Varley noted at that time that Ronald was continuing to work and “that although he was financially unable to change vocations his job does make his [lower-back pain] worse.”
Everest’s coverage period as Gray Flooring’s workers’ compensation carrier ended on February 7, 2000. Fireman’s Fund’s coverage period as Gray Flooring’s workers’ compensation insurance carrier began on February 7, 2000, and ended on December 2, 2000. Dr. Varley performed a discogram on Ronald on July 25, 2000, which demonstrated severely degenerated and painful discs at all levels being treated. Ronald returned to Dr. Varley on August 3, 2000, with continued complaints of pain, which Ronald rated as a 5 to 8 on a scale of 10. Dr. Varley noted that Ronald was working 10 to 12 hours per day and that he wanted to continue to work as long as he possibly could. Dr. Varley testified that at the time of the August 3, 2000, office visit it was his opinion, based on a reasonable degree of medical certainty, that Ronald’s continued work as a carpet installer would either aggravate or worsen his back condition at the LI through L5-S1 levels. Ronald contends that because of the physical demands and stress placed upon his back as a carpet installer, he became unable to continue performing his regular duties as a carpet installer in October 2000 because of his lower-back pain. Ronald stated that when he was on a job site after October 2000 he would “pretty much just go meet with the superintendent, walk over the job, make sure it was being done.” He stated that he would not perform any physical labor that would be associated with the regular, full-time duties of a carpet installer, except that he may have installed some plastic baseboard. He stated that installing plastic baseboard comprised 10 percent or less of a carpet installer’s normal duties and that it was the “easiest thing to do.” Ronald stated that he made the decision to close Gray Flooring in February 2001, wound down the business affairs, and then actually closed Gray Flooring in April 2001.
Fireman’s Fund raises a number of issues on appeal and argues, among other things, that Ronald was not an “employee” of Gray Flooring as that term is defined by the Act. The trial court found that an “employer-employee” relationship existed between the parties.
As mentioned above, Ronald owned Gray Flooring and operated it as a sole proprietorship performing the duties of carpet installer. He worked alongside the employees of Gray Flooring, performing all of the regular duties and physical labor required of a carpet installer. He testified that when Gray Flooring submitted bids for installation jobs, the bids included an hourly rate of $42 for his services. Ronald stated that Gray Flooring had a general business account and a payroll account and that income from Gray Flooring was placed in the payroll account to pay Gray Flooring employees. The employees were paid on a weekly basis from the payroll account based on their hourly rate of pay, and taxes were withheld from their paychecks. However, Ronald testified that he did not receive a set wage or salary paid *758 out of the payroll account. Rather, he testified that he simply took funds out of the general business account when he needed money. Jill Gray, Ronald’s wife, acted as the bookkeeper for Gray Flooring and had knowledge of its financial Operations. She testified as follows:
“Q. The business of Gray Flooring-had a business account and payroll account, correct?
“A. Yes.
“Q. [Ronald] was paid no salary, was he?
“A. Correct.
“Q. The business paid personal expenses out of [the business account], didn’t it?
“A. Yes, we did.
“Q. But [Ronald] never received a salary, correct?
“A. Correct.
“Q. He never received an hourly wage, correct?
“A. Correct.
“Q. He never received a W-2 form showing he was paid a wage, correct?
“A. That’s correct.”
In support of its argument that Ronald was not an employee of Gray Flooring as that term is defined by the Act and, therefore, that Ronald was not entitled to benefits pursuant to the Act, Fireman’s Fund relies on Ford v. Mitcham, 53 Ala.App. 102, 298 So.2d 34 (Civ.1974).
In Ford the plaintiffs husband and the defendant were partners doing business as F & M Construction Company. The plaintiffs husband was killed while acting in the line and scope of the partnership’s business, and the plaintiff sought workers’ compensation benefits from the partnership. The trial court entered an order dismissing the plaintiffs complaint and she appealed. This court held that a working partner cannot also be an employee of that partnership for the purposes of receiving workers’ compensation benefits pursuant to the Act. Ford, supra. This court specifically stated:
“The purpose of Workmen’s Compensation is to place upon industry the burden of disability and death resulting from industrial accidents. It was designed as a substitute for common-law tort actions for personal injuries between master and servant. The act should be liberally construed to carry out its beneficent purposes and reasonable doubts should be resolved in favor of the workman. However, liberality of construction should not proceed to such a point as to amount to judicial legislation.
“A mere superficial reading of Title 26, § 253 [now § 25-5-31, Ala.Code 1975], leaves no doubt that the relationship of employer-employee must exist before benefits can be recovered under the act. The definitions in our statute of employer and employee are not totally clear but they do indicate that a.contractual relationship between two parties is essential. These definitions are found in Title 26, § 262 [the definitions are now located in § 25-5-1, Ala.Code 1975]:
“ ‘... (d) The term “employer” as used herein shall mean every person not excluded by section 263 of this title who employs another to perform a service for hire and to whom “employer” directly pays wages, and shall include any person[,] corporation, co-partnership, or association, or group thereof, ... (g) The terms “employee” and “workman” are used interchangeably and have the same meaning throughout this chapter and shall be construed to mean the same.... Every person, not excluded by Section 263 [now § 25-5-50, Ala.Code 1975] of this title in the service of another *759 under any contract of hire, express or implied, oral or written, includes aliens, and also includes minors who are legally permitted to work under the laws of the state.... ’
“The necessity of a contract implicit in the definitions is lacking in the case of a working partner unless the partnership is considered to be a separate legal entity. A contract contemplates negotiations between two parties wherein one party makes an offer and the other either accepts or makes a counteroffer. Negotiations continue until a bargain is reached or the parties are in agreement on the terms. There must be a meeting of the minds and there can be none if there is only one party involved.
[[Image here]]
“In deciding whether the employer-employee relationship exists, the deciding factor is the reserved right of control. An employer must reserve the right to direct the actions of the employee in carrying out the work for which the contract of employment was entered. Each partner has equal rights in the management of the partnership business. He can perform any action he desires subject only to his fiduciary responsibilities to the other partners. A working partner would, therefore, not be subject to the control of anyone other than himself which would present a situation inconsistent with the concept of master and servant.”
Ford, 53 AlaApp. at 104-05, 298 So.2d at 36 (citations omitted).
We find the principles applicable in Ford to be applicable in determining whether the owner of a sole proprietorship is considered an employee of the business for purposes of the Act. The definition of “employee” in Title 26, § 262(g) is essentially the same definition of “employee” as found in § 25-5-1(5), Ala.Code 1975. Section 25-5-1(5), Ala.Code 1975, defines an “employee” as “every person in the service of another under any contract of hire, express or implied, oral or written.... ” The necessity of a contract found in the definition of “employee” in § 25-5-1(5) is lacking in the case of an owner of a sole proprietorship, just as it was in the case of the working partner in Ford. As noted in Ford, a contract contemplates negotiations between two parties, including the making of an offer or a counteroffer, which continue until a bargain or agreement is reached. A contract requires a meeting of the minds between two individuals, and there cannot be a meeting of the minds if only one individual is involved. Here, because Gray Flooring was not a separate legal entity but was operated as a sole proprietorship, Ronald would have been put in the position of bargaining and contracting with himself for his own services.
Further, as noted in Ford, the “employer must reserve the right to direct the actions of the employee in carrying out the work for which the contract of employment was entered.” Ford, 53 AlaApp. at 105, 298 So.2d at 36. Here, Ronald, as the owner and sole proprietor of Gray Flooring, was not “subject to the control of anyone other than himself which would present a situation inconsistent with the concept of master and servant” on which the Act was based. Id.
We further note that in 1979 the Alabama Legislature amended Ala.Code 1975, § 25-5-50, so as to provide that “[a]ny individual employer ... may accept the provisions of’ Alabama’s workers’ compensation laws “by filing written notice thereof with the department of industrial relations.” See Act No. 79-325, § 1, 1979 Ala. Acts (emphasis added). At that time, the Legislature expressly stated that its intent was “that an individual employer may elect to cover himself as well as his employees *760 under the provisions of workmen’s compensation.” Id.
However, when the Legislature again amended § 25-5-50 in 1992, it deleted the provision permitting individual employers to elect coverage under the Workers’ Compensation Act. It would seem evident that the Legislature’s intent in repealing the pertinent portion of § 25-5-50 in 1992 was the opposite of its intent in enacting it in 1979. As the law now stands, “[i]ndividual employers who own and operate their own businesses are not employees for the purposes of workers’ compensation,” ie., under the Workers’ Compensation Act. 1 Terry A. Moore, Alabama Workers’ Compensation § 5:5 (1998)(footnote omitted).
Accordingly, we conclude that because Ronald was operating Gray Flooring as a sole proprietorship, by definition he is incapable of being “in the service of another under any contract of hire, express or implied, oral or written,” and, therefore, he cannot be considered an employee of Gray Flooring for purposes of the Act. Therefore, we must reverse the judgment of the trial court and remand the case for an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON and MURDOCK, JJ., concur.
PITTMAN, J., concurs specially, with writing.
CRAWLEY, J., concurs in the result, without writing.

. Guarantee Mutual Life Insurance Company was improperly designated as State Claims Adjusters, Inc., in the third-party complaint.

. The trial court’s judgment did not specifically refer to Gray Flooring; however, the judgment against Fireman’s Fund as Gray Flooring’s insurance carrier is effectively a judgment against Gray Flooring.

. Fireman’s Fund named only Ronald and Everest as appellees in the notice of appeal.