MOORE, Judge.
Nicholas Kish petitions this court for a writ of mandamus directing the Jefferson Circuit Court to grant his motion to compel TruGreen Limited Partnership (“Tru-Green”) to provide him with a panel of four surgeons, pursuant to Ala.Code 1975, § 25-5-77(a). We grant the petition and issue the writ.

Procedural History

On April 8, 2009, Kish filed a complaint seeking workers’ compensation benefits from TruGreen. On August 24, 2009, Kish filed a motion to compel TruGreen to provide him with a panel of four surgeons, asserting that he had “utilized a panel of four physicians for selection of a non-surgical doctor,” that he “ha[d] undergone two surgeries to his left knee [performed] by Dr. Thomas Powell, a surgeon authorized by [TruGreen] to treat [Kish,] that Dr. *773 Powell had scheduled a third surgery on [Kish’s] left knee for August 28, 2009,” that Kish “had requested a panel of four surgical physicians from [TruGreen],” and that TruGreen had “refuse[d] to provide [Kish] with the requested panel of four surgeons, maintaining that he has already utilized his panel option.” On September 21, 2009, TruGreen filed a response in opposition to the motion to compel. After a hearing, the circuit court entered an order on October 27, 2009, denying Kish’s motion to compel, stating:
“The Court finds that [Kish] injured multiple body parts as the result of a fall which occurred at work on October 1, 2008. As a result of that fall [Kish] sustained injuries to his left knee, lower back, shoulder and head. After an initial visit at Concentra Medical Center, he was referred to Dr. Thomas Powell for evaluation of his shoulder and left knee, Dr. Martin Jones for an evaluation of his lower back, and to Dr. Dallas Russell, a neurologist, for evaluation of a possible closed head injury. All of these physicians were authorized and paid for by [TruGreen],
“It was determined that [Kish] did not require any treatment for his lower back. However, Dr. Powell diagnosed him as having a torn meniscus in his left knee, and for that condition he underwent arthroscopic surgery on or about October 31, 2008. Following that surgery, [Kish] participated in physical therapy for his left knee. Because he was dissatisfied with the physical therapist that was selected by Dr. Powell’s office, [TruGreen] agreed to send him to a different physical therapist.
“While undergoing treatment for the left knee, on or about November 17, 2008, [Kish] began further treatment with Dr. Dallas Russell in order to treat a possible concussion. Upon referral by Dr. Russell, [TruGreen] authorized and paid for an evaluation by Dr. Velazquez, an ophthalmologist, in order to assess complaints of blurred vision. Subsequent to that, again upon referral by Dr. Russell, [TruGreen] authorized and paid for an evaluation by Dr. Stephen Favrot, an otolaryngologist, in order to assess [Kish’s] complaints of impaired balance. Ultimately, Dr. Russell referred [Kish] to Dr. Carol Walker, a neuropsychologist, for the purpose of undergoing a neuropsychological evaluation in order to assess his numerous complaints related to his claim of a head injury. In or around April 2009, [Kish] began his evaluation with Dr. Walker, but left after two hours of the evaluation, stating that he was having headaches that prevented him from completing the evaluation. He then refused to return to see Dr. Walker, and at that time requested and was provided a panel of four neurologists to replace Dr. Dallas Russell. [Kish] selected Dr. Rotem Elgavish, and underwent treatment at his direction, which included repeat neurological studies and referral to another neuropsychologist for a neuropsychological evaluation. All of this treatment was authorized and paid for by [TruGreen].
“Following his physical therapy, [Kish] continued to complain of problems with his left knee, on or about May 8, 2009, [Kish] underwent a second arthroscopic surgery, again performed by Dr. Thomas Powell. After physical therapy following his second surgical procedure, [Kish] developed further problems with the left knee. Dr. Powell concluded that the continuing problems were most likely related to an inflamed bursa and a possible neuroma in the saphenous nerve and he recommended surgery to remove the bursa and explore for possible neuroma. Surgery was scheduled to take place on August 28, *774 2009. However, [Kish’s] counsel instead requested that [Kish] be provided with another panel of four physicians to replace Dr. Thomas Powell.... TruGreen, refused this request.
“At issue is the proper interpretation of Ala.Code [1975,] § 25-5-77(a). Under this Code section the employer is given the right to choose the initial authorized treating physician. In this case, TruGreen did just that by sending [Kish] to Concentra Medical Care. From there, he was referred to Dr. Thomas Powell, Dr. Martin Jones, and ultimately Dr. Dallas Russell. All of these physicians were authorized and paid for by TruGreen. Also under this Code section, an employee who becomes dissatisfied with the initial treating physician can request a panel of four to choose a new physician. In pertinent part, this section reads as follows:
“ ‘If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer. If surgery is required and if the employee is dissatisfied with the designated surgeon, he or she may so advise the employer, and the employee shall be entitled to select a second surgeon from a panel or list of four surgeons selected by the employer.’ Ala.Code [1975,] § 25-5-77(a).
“By having provided [Kish] with the panel of four neurologists, TruGreen met its obligation under § 25-5-77(a), which allows only one panel. This issue has been addressed by the Court of Civil Appeals in Ex Parte Brookwood Medical Center, Inc., 895 So.2d 1000 (Ala.Civ.App.2004). While the facts of that case are somewhat different, the Court of [Civil] Appeals concluded that the employee gets only one panel of four, and once that panel has been provided and exercised, the employee has no further right to a second panel. Therefore, taking into account the facts of this case, the plain language of Ala. Code [1975,] § 25-5-77(a), and the Court of Civil Appeals’ decision in Ex Parte Brookwood Medical Center, Inc., [Kish’s] Motion to Compel Panel of Four Surgeons should be and it is hereby DENIED and OVERRULED.”
Kish filed his petition for a writ of mandamus on December 7, 2009.

Standard of Review

“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).
“Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003).”
Ex parte Progressive Specialty Ins. Co., 31 So.3d 661, 663 (Ala.2009).

Discussion

In his petition, Kish argues that, pursuant to § 25-5-77(a), TruGreen was required to provide him with a panel of four surgeons, despite his having received a panel of four neurologists previously. TruGreen, however, argues that, pursuant to Ex parte Brookwood Medical Center, Inc., 895 So.2d 1000 (Ala.Civ.App.2004), Kish was entitled to only one panel of four. We agree with Kish.
*775 Section 25-5-77 (a) provides, in pertinent part:
“If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer. If surgery is required and if the employee is dissatisfied with the designated surgeon, he or she may so advise the employer, and the employee shall be entitled to select a second surgeon from a panel or list of four surgeons selected by the employer.”
In construing the terms of the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, the courts are bound by the ordinary rules of statutory construction. See Ex parte Taylor, 728 So.2d 635, 636-37 (Ala.1998). The basic rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Id. When the legislative language is clearly expressed, the intent of the legislature is evidenced by that unambiguous language and the court must give effect to the plain and ordinary meaning of the words. Geter v. United States Steel Corp., 264 Ala. 94, 96-97, 84 So.2d 770, 772 (1956) (“legislative language which is clear and deliberately made[ ] is conclusive on the Court in regard to its meaning.”).
By its plain language, the Act differentiates between physicians and surgeons. As to physicians, the Act grants to an employee dissatisfied with the initial treating physician the right to request that the employer provide a panel of four new physicians from which the employee can select a replacement. As to surgeons, the Act states that an employee shall have a right to have the employer provide a panel of four different surgeons if surgery is needed and the employee is dissatisfied with the surgeon designated by the employer. The two clauses at issue are not overlapping; they are supplemental to one another, intended to cover two different situations. Therefore, the plain language of § 25-5-77(a) suggests that the furnishing of the panel of four physicians pursuant to the first clause does not relieve the employer of the duty to provide an additional panel of four surgeons in the circumstances outlined in the second clause.
Our literal reading of § 25-5-77(a) comports with its purpose as well. The history of the enactment of § 25-5-77(a) shows that the legislature intended to give an employee some range of choice in the matter of the person providing his or her medical treatment in order to give the employee confidence that his or her medical needs will be met and to thereby encourage and expedite the healing process. See City of Auburn v. Brown, 638 So.2d 1339, 1340-41 (Ala.Civ.App.1993). The legislature evidently concluded that when surgery is required, an employee deserves the additional security provided by a separate panel of four. That legislative intent appears especially insightful in cases like this in which the dissatisfaction of the employee with the surgeon designated by the employer stems from the fact that the employee has twice submitted to surgery by that surgeon without lasting recovery. In such cases, the intent of the legislature to assuage the employee’s dissatisfaction with the employer’s designated surgeon and to assure and expedite the healing process basically demands that the employee receive a panel of four new surgeons from which to choose a new surgical provider. To hold that an employee has exhausted his or her surgical options by previously selecting a different initial treating physician would defeat that benef *776 icent purpose of the Act. See Ala. Acts 1992, Act No. 92-537, § 1 (“The Alabama Workers’ Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes.”).
The holding in Ex parte Brookwood Medical Center, supra, does not conflict with our holding in this case. In Brook-wood, the employee suffered a work-related injury. 895 So.2d at 1004. The employee underwent treatment with the initial treating physician chosen by the employer; that physician performed surgery on the employee’s spine, referred the employee to another physician for pain management, and released the employee to return to work on light duty. Id. The employee, dissatisfied with the authorized treating physician, was provided with a panel of four physicians, and he chose a second authorized treating physician. Id. The second physician also referred the employee to another physician for pain-management treatment. Id. The employee then requested an additional panel of four physicians from which to choose a new pain-management physician. The employer refused that request. Id.
The employee filed a motion to compel the employer to provide him with a second panel of four physicians, and the trial court granted that motion. Id. The employer petitioned this court for a writ of mandamus requesting that this court direct the trial court to vacate its order granting the employee’s motion. Id. This court granted the petition, holding that an employee “ ‘has no statutory right to request a second panel of four [physicians].’ ” Brookwood, 895 So.2d at 1006 (quoting 2 Terry A. Moore, Alabama Workers’ Compensation § 17:21 (Supp.2003)). This court stated: “In this case, the employer was wrongly compelled, in contravention of § 25-5-77(a), to provide a second panel of four physicians after the employee had already expressed dissatisfaction with a former treating physician and had already been allowed to choose another physician from an employer-nominated panel of four.” 895 So.2d at 1006.
The facts of the present case are distinguishable from those in Broolavood. In this case, Kish is not seeking a second panel of four physicians but, instead, is seeking for the first time a panel of four surgeons. Section 25-5-77(a) provides for both a panel of four physicians and, if surgery is required and the employee is dissatisfied with the surgeon designated by the employer, a panel of four surgeons. See 2 Terry A. Moore, Alabama Workers’ Compensation § 17:21 (Supp.2009) (“[I]f the employee has previously received a panel of four physicians, and later seeks a panel of four surgeons from which to choose due to dissatisfaction with the surgeon selected by the employer, the second request would be within the statute, as it distinguishes between physicians and surgeons.”). The holding in Brookwood does not encompass that situation.
In this case, TruGreen does not dispute that Kish needs additional surgery or that Kish is dissatisfied with the surgeon selected by TruGreen to perform that surgery. Thus, we conclude that, based on the plain language of § 25-5-77(a), Kish has a clear legal right to select a new surgeon from a panel of four surgeons provided by TruGreen. Based on the foregoing, we conclude that the requirements for the issuance of a writ of mandamus have been met. Accordingly, we grant Kish’s petition and direct the circuit court to grant his motion to compel TruGreen to provide him with a panel of four surgeons from which he can choose a new surgeon.
*777 PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.