THOMPSON, Presiding Judge.
Everest National Insurance Company (“Everest”) petitions this court for a writ of mandamus directing the Jefferson Circuit Court to set aside its order granting Ronald Gray’s motion to compel Everest to provide a panel of four physicians pursuant to § 25-5-77(a), Ala.Code.1975. For the reasons set forth herein, we deny the petition.
This is the second time this action, arising under the Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, has been before this court. See Fireman’s Fund Ins. Co. v. Gray, 898 So.2d 753 (Ala.Civ.App.2004). Some of the procedural history relevant to the present proceeding is contained in Fireman’s Fund:
“Ronald Gray sued Danny Gray Flooring (‘Gray Flooring’), a business owned by [Gray], on October 13, 2000, seeking to recover workers’ compensation benefits for injuries he sustained to his lower back on November 1, 1998. Gray Flooring answered the complaint on October 25, 2000. On May 17, 2001, Everest National Insurance Company (‘Everest’) moved to intervene in the workers’ compensation action as a real party in interest. Everest alleged that . [Gray] was the owner of Gray Flooring; that it was the workers’ compensation insurer for Gray Flooring from February 7, 1998, through February 7, 2000; and that the case was not adversarial in nature because [Gray] was the owner of Gray Flooring. Everest sought to intervene in order to fully defend the claim against Gray Flooring and to seek a determination of its obligations, if any, pursuant to the Alabama Workers’ Compensation Act (‘the Act’). The trial court entered an order on June 18, 2001, granting Everest’s motion to intervene.”
898 So.2d at 753-54. Subsequent to Everest’s intervention, several other insurance companies, including Fireman’s Fund Insurance Company (“Fireman’s Fund”), were joined in the action. Both Gray and Everest asserted claims against Fireman’s Fund.
On May 7, 2002, Gray, Gray Flooring, and Everest petitioned the trial court for the approval of a settlement agreement between those parties, which the trial court granted. Pursuant to the settlement agreement, Everest agreed to settle all claims arising from Gray’s November 1, 1998, injury for $105,000, with Everest remaining liable for future medical benefits.
After Gray, Gray Flooring, and Everest had entered into the settlement agreement, the trial court held an ore ten-us proceeding, after which it entered a judgment finding, among other things, that Fireman’s Fund was liable to Gray under the last-injurious-exposure rule.[1]
*956 Fireman’s Fund filed an appeal to this court. This court reversed the trial court’s judgment and remanded the case for the entry of a new judgment. 898 So.2d at 760. On June 10, 2005, the trial court entered a judgment on remand in favor of Fireman’s Fund as to Gray’s and Everest’s claims against it.
On November 4, 2010, Everest filed a motion to reopen the case and to terminate its obligation to provide future medical benefits to Gray. It alleged that Gray had been misusing prescription medications and that his pain-management physician, Dr. Michael Kendrick, had released him from his care. Everest attached to its motion, among other things, some of the medical records of Gray’s treatment. Gray filed a response to Everest’s motion in which he argued that Dr. Kendrick had wrongfully released him from his care. He requested that the trial court order Everest to show cause why it should not be held in contempt for failing to provide him with a pain specialist immediately after Dr. Kendrick released him from his care, and he requested that the trial court order Everest to provide him with a panel of four physicians specializing in pain management for him to select a new physician. See § 25-5-77(a), Ala.Code 1975.
On December 21, 2010, the trial court entered an order denying Everest’s motion to terminate medical benefits. It did not rule on Gray’s request for a panel of four physicians. Everest referred Gray to another pain-management physician.
On February 11, 2011, Gray filed a motion to compel Everest to provide him with a panel of four physicians from which he could choose a physician to replace the pain-management physician Everest had authorized after Gray was released from Dr. Kendrick’s care. He stated that Everest had taken the position that it did not have to provide a panel of four physicians because it previously had provided a panel of four surgeons to Gray. Gray argued that, pursuant to § 25-5-77(a), an injured worker is entitled to a panel of four physicians and a panel of four surgeons.
Everest filed a response to Gray’s motion to compel it to provide a panel of four physicians in which it argued that it had previously provided Gray with a panel of four physicians at Gray’s request after Gray had become dissatisfied with the doctor who had performed surgery on him. Everest argued that Gray had chosen a “new physician/surgeon” from that panel. Addressing Gray’s contention that § 25-5-77(a) provides for a panel of four physicians and, separately, for a panel of four surgeons, Everest argued that “all surgeons are physicians” and, as a result, that “if an injured worker’s first request is for a panel of four surgeons, then he or she ha[s] effectively used both of his potential panel requests at one time.”
The trial court held a hearing, after which, on March 22, 2011, it entered an order compelling Everest to provide Gray with a panel of four physicians from which Gray was to select a physician to replace the physician authorized by Everest after Dr. Kendrick had released Gray from his care. Everest filed an appeal to this court. This court, in an order issued on May 31, 2011, determined that Everest’s appeal was due to be treated as a petition for a writ of mandamus.
Our supreme court has set forth the following standard by which this court considers a petition for a writ of mandamus:
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) *957 the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). “The petitioner bears the burden of proving each of these elements before the writ will issue.” Ex parte Glover, 801 So.2d 1, 6 (Ala.2001). Moreover, “in mandamus proceedings, we indulge all reasonable presumptions favoring the correctness of the judgment appealed from, and the petitioner must overcome this presumption by satisfactorily countervailing evidence.” Ex parte Boykin, 568 So.2d 1243, 1244 (Ala.Civ.App.1990). “[T]he writ is not to be granted unless there is a clear showing of error in the trial court.” Ex parte Shepherd, 560 So.2d 1089, 1090 (Ala.Civ.App.1990).
Section 25-5-77(a) provides in relevant part:
“If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer. If surgery is required and if the employee is dissatisfied with the designated surgeon, he or she may so advise the employer, and the employee shall be entitled to select a second surgeon from a panel or list of four surgeons selected by the employer.”
This court recently discussed the proper application of § 25-5-77(a) with regard to the provision of physician and surgeon panels:
“By its plain language, the [Workers’ Compensation] Act differentiates between physicians and surgeons. As to physicians, the Act grants to an employee dissatisfied with the initial treating physician the right to request that the employer provide a panel of four new physicians from which the employee can select a replacement. As to surgeons, the Act states that an employee shall have a right to have the employer provide a panel of four different surgeons if surgery is needed and the employee is dissatisfied with the surgeon designated by the employer. The two clauses at issue are not overlapping; they are supplemental to one another, intended to cover two different situations. Therefore, the plain language of § 25-5-77(a) suggests that the furnishing of the panel of four physicians pursuant to the first clause does not relieve the employer of the duty to provide an additional panel of four surgeons in the circumstances outlined in the second clause.
“Our literal reading of § 25-5-77(a) comports with its purpose as well. The history of the enactment of § 25-5-77(a) shows that the legislature intended to give an employee some range of choice in the matter of the person providing his or her medical treatment in order to give the employee confidence that his or her medical needs will be met and to thereby encourage and expedite the healing process. See City of Auburn v. Brown, 638 So.2d 1339, 1340-41 (Ala.Civ.App.1993). The legislature evidently concluded that when surgery is required, an employee deserves the additional security provided by a separate panel of four. That legislative intent appears especially insightful in cases like this in which the dissatisfaction of the employee with the surgeon designated by the employer stems from the fact that the employee has twice submitted to surgery by that surgeon without lasting recovery. In such cases, the intent of the legislature to assuage the employee’s dissatisfaction with the employer’s designated surgeon and to assure and *958 expedite the healing process basically demands that the employee receive a panel of four new surgeons from which to choose a new surgical provider. To hold that an employee has exhausted his or her surgical options by previously selecting a different initial treating physician would defeat that beneficent purpose of the Act. See Ala. Acts 1992, Act No. 92-537, § 1 (‘The Alabama Workers’ Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes.’).”
Ex parte Kish, 45 So.3d 772, 775-76 (Ala.Civ.App.2010).
Everest contends that it had previously provided Gray with a panel of four physicians and, as a result, that Gray is not entitled to a second panel of four physicians. It argues that “[a] second panel is only mandated if surgery is required and the employee is not satisfied with the provided authorized surgeon.” Everest states that Gray’s initial authorized surgeon was Dr. Robert Craddock, who performed surgery on Gray in 1999. It states that Gray became dissatisfied with Dr. Craddock’s care, requested a panel of four physicians, and chose Dr. Thomas Staner, a neurosurgeon, from that panel. Everest states that Dr. Staner did not perform surgery on Gray but, instead, directed the course of Gray’s treatment over almost 10 years and “acted solely to coordinate [Gray]’s pain-management treatment.” Thus, Everest concludes, Gray “has been granted his one panel of physicians and is not entitled to a new panel.”
The evidence of record in this case is sparse.[2] For example, Everest attached a few medical records to its petition to terminate medical benefits, and a copy of an e-mail exchange between the attorneys for Everest and Gray is attached to Gray’s motion to compel the provision of a panel of four physicians and Everest’s response thereto. No evidence contained in the materials before this court directly addresses the one overriding question that must be answered for the requested writ to issue: whether Gray sought the panel of doctors to replace Dr. Craddock because additional surgery was necessary and Gray was not satisfied with Dr. Craddock’s performing that surgery or whether, in requesting a new panel, Gray was seeking a new physician for the performance of other medical treatment. See § 25-5-77(a); Kish, 45 So.3d at 775-76. Indeed, the materials before this court contain very little evidence relating generally to the provision of the first panel to Gray.[3]
As previously noted, it was Everest’s burden to demonstrate, among other *959 things, that it had “a clear legal right” to the denial of Gray’s motion to compel it to provide a panel of four physicians. Ex parte Glover, 801 So.2d at 6; Ex parte Integon Corp., 672 So.2d at 499. Although Everest has provided this court with argument, we cannot discern from the materials before this court any evidence that would overcome the presumption in favor of the trial court’s decision to require Everest to provide Gray with the panel of physicians he requested. See Ex parte Boykin, 568 So.2d at 1244. See also Ex parte Shepherd, 560 So.2d 1089, 1090 (Ala.Civ.App.1990) (denying petition for writ of mandamus because, although the father contended that the trial court lacked jurisdiction under Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (West Supp.1986), the evidence before the appellate court on petition for writ of mandamus did not provide a basis on which to determine that the trial court had erred in its contrary conclusion). Because it has failed to cite any relevant evidence bearing on the issue raised by its petition, Everest has failed to demonstrate a clear legal right to a writ of mandamus, and this court is without a basis on which to grant the petition.
Based on the foregoing, Everest’s mandamus petition is due to be, and is hereby, denied.
PETITION DENIED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. The last-injurious-exposure rule is used "to determine which insurance carrier bears responsibility for paying workers’ compensation benefits when an employee suffers two or more episodes of compensable disability with an intervening change of employers or change of insurance carriers by the same employer.” Ex parte Pike Cnty. Comm'n, 740 So.2d 1080, 1083 (Ala.1999).

. Because this proceeding began as an appeal, the circuit clerk prepared and transmitted to this court a record of the proceedings in the trial court. Normally, in a mandamus proceeding, the trial court clerk would not prepare a record, and this court would rely on the documents attached to the petitioner’s petition. See Rule 21, Ala. R.App. P. We note that Everest designated only certain portions of the trial court’s record for inclusion in the appellate record.

. The parties’ briefs contain numerous factual assertions relating to the provision of the panel to Gray from which he selected Dr. Staner. However, those statements are largely unsupported by any evidence or citation to eviden-tiary material; the statements themselves do not constitute evidence. See Ex parte Russell, 911 So.2d 719, 725 (Ala.Civ.App.2005) ("The unsworn statements, factual assertions, and arguments of counsel are not evidence.”). Cf. Ex parte ADT Sec. Servs., Inc., 933 So.2d 343, 345 (Ala.2006) (" 'In considering a mandamus petition, we must look at only those facts before the trial court.' Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995) (emphasis added). Of course, facts must be based upon ‘evidentiary material,’ which does not include statements of counsel in motions, briefs, and arguments.”).